# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE, et al., on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>D.M. CAMP & SONS, et al.,<br><br>    Defendants. | CIV-F-05-1417 AWI SMS<br><br>**ORDER RE: MOTION TO DISMISS**<br><br><br>Doc. 190 |

## I. History

Defendant D.M. Camp & Sons is a commercial table grape grower based in Kern County. Plaintiffs Fernando Rodriguez and Guadalupe Herrera are former employees of Defendant. The operative complaint is the third amended complaint, ("TAC"). Doc. 170. The TAC alleges Defendant failed to properly pay wages by forcing employees to work off the clock, forcing employees to purchase tools out of pocket, failing to pay minimum required wages, failing to provide meal and rest periods, failing to provide accurate itemized wage statements, and failing to maintain time records. Plaintiffs' claims are divided into ten causes of action: (1) violations of the federal Migrant and Seasonal Agricultural Workers Protection Act, 29 U.S.C. §1801 et seq. ("AWPA") through misinformation concerning the terms and conditions of employment, noncompliance with the terms of the working arrangement, failure to pay wages when due, and failing to provide accurate itemized written statements; (2) failure to pay wages; (3) failure to pay reporting time wages; (4) failure to provide required meal and rest periods as required by the

Industrial Welfare Commission Work Order 14 ("IWC Order 14-2001") and Cal. Labor Code §226.7; (5) failure to pay wages in a timely manner at the termination of employment; (6) failure to provide itemized employee wage statements; (7) recovery for these violations under the Private Attorney General Act, Cal. Labor Code §2699 et seq. ("PAGA"); (8) breach of contract; (9) violation of the Unfair Competition Law, Cal. Bus. & Prof. Code §17200 et seq. ("UCL") through the above described activities; and (10) failure to pay overtime wages.

Defendant has made a motion to dismiss on a number of grounds. Defendant argues there is no remedy for IWC Order 14-2001 meal and rest period violations under Cal. Labor Code §226.7; Plaintiffs fail to state an AWPA cause of action; and the court should decline to assert supplemental jurisdiction over state law claims.

## II. Legal Standards

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007), citations omitted. The court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). The court must also assume that "general allegations embrace those specific facts that are necessary to support the claim." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990), citing Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds at 127 S. Ct. 1955, 1969. Thus, the determinative question is whether there is any set of

"facts that could be proved consistent with the allegations of the complaint" that would entitle plaintiff to some relief. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002). At the other bound, courts will not assume that plaintiffs "can prove facts which [they have] not alleged, or that the defendants have violated...laws in ways that have not been alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).

In deciding whether to dismiss a claim under Rule 12(b)(6), the Court is generally limited to reviewing only the complaint. "There are, however, two exceptions....First, a court may consider material which is properly submitted as part of the complaint on a motion to dismiss...If the documents are not physically attached to the complaint, they may be considered if the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them. Second, under Fed. R. Evid. 201, a court may take judicial notice of matters of public record." Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001), citations omitted. The Ninth Circuit later gave a separate definition of "the 'incorporation by reference' doctrine, which permits us to take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005), citations omitted. "[A] court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss. Facts raised for the first time in opposition papers should be considered by the court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice." Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003), citations omitted.

If a Rule 12(b)(6) motion to dismiss is granted, claims may be dismissed with or without prejudice, and with or without leave to amend. "[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc), quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995). In other words, leave to amend need not be granted when amendment would be futile. Gompper v. VISX,

Inc., 298 F.3d 893, 898 (9th Cir. 2002).

### III. Discussion

### A. Meal and Rest Periods

Plaintiffs' fourth cause of action alleges "the class members worked for periods of more than five hours without a meal period of 30 minutes and were not provided full statutory ten minute rest periods while in the employ of Defendants....Plaintiffs and the Class members they seek to represent did not voluntarily or willfully waive rest and/or meal periods." Doc. 170, TAC, at 16:5-8 and 17:6-7. Plaintiffs allege that this constitutes a violation of Cal. Labor. Code §226.7 while Defendant asserts that Plaintiffs have failed to state a claim under Section 226.7.

### 1. Substantive Meal and Rest Period Requirements

The Industrial Welfare Commission ("IWC") is "the state agency empowered to formulate regulations (known as wage orders) governing employment in the State of California [while the] Division of Labor Standards Enforcement (DLSE)...is the state agency empowered to enforce California's labor laws, including IWC wage orders." Tidewater Marine Western, Inc. v. Bradshaw, 14 Cal. 4th 557, 561-62 (Cal. 1996). There are seventeen Industrial Welfare Commission Wage Orders ("IWC Orders") which cover different fields of employment; the IWC Order 14-2001 applies to "all persons employed in an agricultural occupation." Cal. Code Regs. tit. 8, §11140 (2009). These IWC Orders supplement the California Labor Code and "may provide more restrictive provisions than are provided by the general statutes adopted by the Legislature." Industrial Welfare Com. v. Superior Court of Kern County, 27 Cal. 3d 690, 733 (Cal. 1980), citations omitted.

Relevant to the present discussion, all of the IWC Orders were amended in 1980 and 2001. Under longstanding California law, the IWC "shall prepare a statement as to the basis upon which an adopted or amended order is predicated." Cal. Lab. Code §1177(b). "Labor Code sections 61 and 1193.5 specifically empower the DLSE to interpret and enforce IWC Orders with the primary objective of protecting workers. IWC orders must be liberally

construed to accomplish this primary objective." <u>Bono Enterprises, Inc. v. Bradshaw</u>, 32 Cal. App. 4th 968, 974 (Cal. Ct. App. 1995), citing <u>Industrial Welfare Com. v. Superior Court</u>, 27 Cal. 3d 690, 724 (Cal. 1980). The DLSE issues advice letters which state DLSE's interpretation of various issues arising from the IWC Orders. An older opinion states, "DLSE's interpretation of an IWC order is entitled to great weight and, unless it is clearly unreasonable, it will be upheld." <u>Monzon v. Schaefer Ambulance Service, Inc.</u>, 224 Cal. App. 3d 16, 30 (Cal. Ct. App. 1990), quotations omitted. The California Supreme Court has consulted DLSE advice letters in interpreting IWC Orders. <u>Morillion v. Royal Packing Co.</u>, 22 Cal. 4th 575, 584 (Cal. 2000), ("Unlike interpretive policies contained in the DLSE's 1989 Operations and Procedures Manual, advice letters are not subject to the rulemaking provisions of the APA. Although Royal correctly observes that the factual situations these advice letters address may be distinguished from this case, we nonetheless find persuasive the following general statement of 'hours worked' THE DLSE MADE IN EACH OF THESE LETTERS") emphasis in original; but see <u>Medrano v. D'Arrigo Bros. Co.</u>, 336 F. Supp. 2d 1053, 1058 (N.D. Cal. 2004) (citing <u>Morillon</u> in finding "DLSE's opinion is not binding authority").

IWC Order 14-2001 states:

> 11. Meal Periods. Every employer shall authorize and permit all employees after a work period of not more than five (5) hours to take a meal period of not less than thirty (30) minutes, except that when a work period of not more than six (6) hours will complete the day's work, the meal period may be waived by mutual consent of employer and employee. Unless the employee is relieved of all duty during a thirty (30) minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked. An 'on duty' meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on- the-job paid meal period is agreed to.

> 12. Rest Periods. Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours. Authorized rest period time shall be counted, as hours worked for which there shall be no deduction from wages.

Cal. Code Regs. tit. 8, §11140 (2006). The court interprets this language solely to the extent necessary to determine whether it falls under the coverage of Section 226.7.

Plaintiffs argue that "Wage Order 14 makes clear that employees must be permitted to

5

take their meal and rest periods at the time and under the circumstances prescribed....The fact that an agricultural employee who has been 'authorize[d] and permit[ted]' to take his or her 30 minute meal period may voluntarily decline to take that meal period, does not in any way abrogate the employer's mandatory duty to 'authorize and permit' such employee to take the meal period as specified in Order 14-2001." Doc. 206, Opposition, at 12:23-13:19. Plaintiffs allege they "did not voluntarily or willfully waive rest and/or meal periods. Any express or implied waivers obtained from Plaintiffs and/or Class Members were not willfully obtained, were not voluntarily agreed to, were a condition of employment, or part of a contract of an unlawful adhesion. On information and belief, during the meal and rest period liability period, Defendants did not permit or authorize Plaintiffs and Class Members to take meal and rest periods." Doc. 170, at 17:7-11. This interpretation is in accord with a DLSE advice letter on the issue:

> While the pre-1980 Orders had contained the meal period language 'No employer shall employ any person...,' currently contained in Labor Code §512 and the other wage orders, that provision was amended in the 1980 Agricultural Wage Order (14-80) to provide that the employer must 'authorize and permit' a meal period. The prohibitive language remained the same in all of the other wage orders.
>
> The meal period requirements are contained in the wage orders to protect the health of the workers. This public policy issue must be enforced in such a way as to insure that these health concerns are adequately addressed. The current language of Order 14, Section 11, creates an affirmative duty on the employer of agricultural employees to 'authorize and permit' those workers to take a 30-minute meal period within each five-hour time frame. The right of the employee to take the meal period is, thus, statutorily protected. In the event such a meal period is not taken by the employee, the burden is on the employer to show that the agricultural employee had been advised of his or her legal right to take a meal period and has knowingly and voluntarily decided not to take the meal period. Again, we emphasize, the burden is on the employer.
>
> As a statutorily protected right, the decision to forego a meal period must be made personally by each worker on a daily basis. The decision to forego a meal period may not, therefore, be based on a specific requirement of the employer or on a policy or practice which could reasonably be perceived to be a condition of employment. Therefore, blanket 'waivers' of meal periods or 'group' agreements to forego or forestall meal periods until later in the work day, whether written or oral, will not be considered valid.
>
> ....
>
> We also point out that the provisions of IWC Order 14, Section 7(A)(3) provide that required time records must include: 'Time records showing when the employee begins and ends each work period. Meal periods, split shift intervals and total daily hours worked shall also be recorded. Meal periods during which, operations cease and authorized rest periods need not be recorded.'

6

> Assuming that any agricultural employee, as defined in the Orders, chooses not to take a meal period despite the fact that they have been authorized and permitted to do so, the record must reflect the time in and out of those workers who did choose to take a meal period since all of the operations did not cease.

August 13, 2003 Letter, accessed at http://www.fels.org/Data/forms/DLSE-MealPeriodLtr.pdf. This interpretation is similar to the DLSE's position on rest period regulations; in another advice letter, the DLSE said

> rest periods differ from meal periods, during which an employer has an affirmative obligation to ensure that workers are actually relieved of all duty, not performing any work....an employer is not subject to any sort of penalty or premium pay obligation if an employee who was truly authorized and permitted to take a rest break, as required under the applicable wage order, *freely chooses without any coercion or encouragement* to forego or waive a rest period.

January 28, 2002 Letter, accessed at http://www.dir.ca.gov/dlse/opinions/2002-01-28.pdf, emphasis in original.[1]

The assumption that agricultural employees have unfettered ability to waive a meal period appears to conflict with the text of IWC Order 14-2001 itself. While employers have to "authorize and permit," the regulation says that a meal period may only be waived "by mutual consent of employer and employee" when the total work period is less than six hours. Further, "on duty" meals are only permitted in limited circumstances. This language strongly suggests that employers must enforce a meal break if the work period is over six hours. The DLSE

---

[1]The Fourth Appellate District dealt with rest period regulations under IWC Order 5: "Brinker asserts the court failed to address the issue of whether employers must "force" employees to take rest breaks and, had it correctly ascertained that Brinker was not responsible for requiring its employees to take rest breaks, 'it necessarily would have concluded that liability could only be established on an individual basis and that plaintiffs' claims were not amenable to class treatment.' In their return to the petition, plaintiffs respond they never disputed that rest breaks can be waived, and thus the court did not have to consider or decide that legal question." Brinker Restaurant Corp. v. Superior Court, 165 Cal. App. 4th 25, 47 (Cal. Ct. App. 2008). The California Supreme Court has recently granted review. See Brinker Restaurant Corp. v. Superior Court, 85 Cal. Rptr. 3d 688 (Cal. 2008). The court does not know if the California Supreme Court will comment on whether employers have any affirmative duty to ensure rest breaks are taken. For the purposes of this order, the court assumes that rest periods are waivable (per the representations of the parties) without formally deciding the issue.

interpretation effectively reshapes the regulation to read "Every employer shall authorize and permit all employees after a work period of not more than five (5) hours to take a meal period of not less than thirty (30) minutes," excising the rest of the text.

As the advice letter points out, the IWC Order 14-2001 language covering meal periods was originally adopted in 1979. Prior to that time, IWC Order 14-76 read, "No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than thirty (30) minutes except..." The statement as to the basis of the revised IWC Order 14-80 meal period regulation states, "The IWC amended this section to make it a little more flexible in response to evidence about the nature of agricultural work." Doc. 125, Ex. 4. At public hearings of the Industrial Welfare Commission on August 27, 1979 in Fresno, witnesses from the agricultural industry (employers) testified that they desired for more flexibility over meal periods for piece rate workers and commented on the proposed amendment to IWC Order 14 (substituting "authorize and permit" for "no employer shall"). Richard Glade of the Agricultural Producers, an association of citrus and avocado producers, argued in favor of applying the proposed IWC Order 14 language to piece rate workers covered under IWC Orders 8 and 13 (industries handling products after harvest and industries preparing agricultural products for the market):

> If they want to eat in the morning, they'll eat in the morning. Or if they want to stop for five minutes or ten minutes and have a second sandwich, they'll do that–and that's pretty traditional in our industry. This is why we are urging that this meal period be modified to permit these people at their option to do that and not for the Commission to put us in the position where we have to tell such an individual, 'Stop. You can't do that.'....
>
> we support the provision for a meal period. All we are saying is let's give the employee the option and the freedom to follow his wishes. If he has no individual wishes or no individual preference, of course, he gets the 30 minutes during the middle of the day.

Doc. 125, Ex. 5, Transcript, at 75:15-76:7. Nevertheless, there was significant confusion as to the meaning of "authorize and permit." Jean-Mari Ullman of the California Grape and Tree Fruit League addressed the question directly:

> Under Order 14. I don't remember the section number. But it is referring to Meal Periods....and that it can cause a problem, and I am not sure that I am interpreting the way the Order reads correctly or not. Perhaps you could clarify this for me. But it was our interpretation when we read that section on Meal Periods that under Order 14 when you have a situation where workers are working under a piece rate basis that the grower

> doesn't have to be there to enforce and make sure that his workers are taking a 30-minute lunch period. As was brought out, there are a lot of times when they are working on a piece rate and they want to hurry up and get back and start picking as fast as they can. So they might take a ten-minute break here and a ten-minute break there and a ten-minute break somewhere else. So we want to make sure that there is that flexibility under Order 14 so that you don't actually have to stop the crews and take a break.....
>
> It was our understanding that that change was going to allow that kind of flexibility. That was our interpretation. But I wanted to make sure that our interpretation was correct on that. Was that the intent on that section?

Doc. 125, Ex. 5, Transcript, at 132:7-133:8. Unfortunately, Ms. Ullman was not able to get a straightforward answer from the IWC. Both Deputy Attorney General Gordon Zane, Counsel to the IWC, and IWC Chairperson Mike Elorduy demurred. See Doc. 125, Ex. 5, Transcript, at 133:14-19 and 134:4-5. IWC Commissioners Jackie Walsh said, " If you asked me, I would say we changed it. We said, 'didn't require the employee to actually do it' but that I was saying that 'we allowed it and permitted it.'"Doc. 125, Ex. 5, Transcript, at 133:22-24. IWC Commissioner Howard Wackman III said "I can only make a comment, Mike, as the maker of the motion on that and in doing some work on the wording of it that it was the intent that the employer should allow the person to take the time off if that person desired it but that the employer was not mandatorily forcing that worker to take it off." Doc. 125, Ex. 5, Transcript, at 134:6-11.

While the response of the two IWC Commissioners supports Ms. Ullman's interpretation, there was continued uncertainty as to the meaning of the new language. Mr. Glade returned to the topic, saying:

> I am coming back now again to my request that you consider some flexibility in the meal period for people working on the piece rate reminding you again that these people are working on their own time. You remember I mentioned to you that it is not uncommon with people harvesting citrus to take very brief meal periods. They may take a sandwich for ten minutes. They may later in the day take another ten minutes. Now, in regards to the comments made on Order 14 and the changes in Paragraph (A), I hope you won't think me critical, but as I look at this provision all it says–and I am talking about the new language–is that every employer will authorize and permit 30 minutes for meals. Now it would be so simple to say very clearly and very plainly that such an employee if he chooses may waive part of that time. Now I think it was very proper that the Attorney General refrained from commenting on this provision, and I am simply urging you to avoid problems or create the problems when you have the opportunity to very clearly and very positively state that the employee has the option to waive part of this time. Mind you, we are accepting the provision. Yes, the employer must authorize a 30-minute meal period. But we don't feel it is possible for us to be the policemen when we have people in the fields and the harvestors or irrigators are not there. Maybe the Foreman isn't there. We should not be in the position where we have to police and order an employee to quit

> working when he is taking a ten-minute meal period and then wants to continue working. So I urge you while you have this opportunity to be clear on this point and not put us in a hassle over it with the administrative staff.

Doc. 125, Ex. 5, Transcript, at 140:5-141:10. In response, IWC Charperson Elorduy said,

> Surely you have those that are more concerned in working perhaps straight through because they are concerned about the monetary end of it. I think the Commission's responsibility is the standards we have to set up in the interest of the health and the welfare of the employee. What happens if someone does not police it and if you have a crew out there that because, as you say, the employee's desire is to work without a meal period or without a relief period because they are on piecework. My responsibility as I understand it is to correct that situation. The employee is not right just because he wants to do it. There has to be some policing and somebody from Division to enforce it.

Doc. 125, Ex. 5, Transcript, at 141:23-142:11. Ultimately, the new meal period language was adopted by a vote of three to two; IWC Chairperson Elorduy voted against the amendment. Doc. 125, Ex. 6, September 7, 1979 Transcript of Public Meeting To Adopt Revised Orders, at 165:3-24. There was no further clarification of the meal period text at the hearing.

The new language is seriously flawed. In 1979, some members of the IWC were trying to grant more flexibility to agricultural workers paid on a piece rate basis; there is no indication that the ability to waive a meal period was meant to apply to workers paid strictly on an hourly basis. The new language adopted must have been the result of political compromise. Its opaqueness was pointed out by the witnesses at the hearing. More seriously, it is not clear if there was a consensus as to what the new language meant among the IWC itself. The plain reading of the meal period language in IWC Order 14-2001, standing alone, suggests that the IWC's attempt at making substantive changes to the meal period regulation failed and that "authorize and permit" should be read as equivalent to "no employer shall."[2]

---

[2] The Northern District, in interpreting IWC Order 7 (which like all other IWC Orders reads "no employer shall employ...") has found "the California Legislature intended only for employers to offer meal periods - not to ensure that those periods were actually taken." White v. Starbucks Corp, 497 F. Supp. 2d 1080, 1088 (N.D. Cal. 2007); see also Kenny v. Supercuts, Inc., 252 F.R.D. 641, 645 (N.D. Cal. 2008); Perez v. Safety-Kleen Sys., 253 F.R.D. 508, 515 (N.D. Cal. 2008). This interpretation is shared by the Central and Southern Districts in analyzing IWC Order 9. Brown v. Fed. Express Corp., 249 F.R.D. 580, 585 (C.D. Cal. 2008); Salazar v. Avis Budget Group, Inc., 251 F.R.D. 529, 533 (S.D. Cal. 2008).

As stated before, the court need not make a ruling on the precise meaning of IWC Order 14-2001. The court agrees that under the applicable meal period regulations, employers are required at minimum to offer employees a meal period after a work period of five hours. Whether employers are required to do more is a question that need not be answered.

**2. Applicability of Section 226.7**

Cal. Labor Code §226.7 states, "(a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission. (b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided." Plaintiff asserts that Defendant did not "provide" the meal and rest periods as required by Section 226.7(b). Defendant argues that Section 226.7 does not apply to agricultural workers as IWC Order 14-2001 only requires an employer to "authorize and permit" these periods, not "provide" them. The argument appears to be that the use of "mandated" in subsection (a) means that subsection (b) only refers to meal and rest periods which can not be waived by the employee. Again, despite the uncertainty surrounding the IWC Order 14-2001 language, the court is working on Plaintiffs' allegations and Plaintiffs' interpretation of the regulation.

---

The Fourth Appellate District has held that under IWC Order 5, "employers need only make meal breaks available, not 'ensure' they are taken." Brinker Restaurant Corp. v. Superior Court, 165 Cal. App. 4th 25, 50 (Cal. Ct. App. 2008). The California Supreme Court has recently granted review. See Brinker Restaurant Corp. v. Superior Court, 85 Cal. Rptr. 3d 688 (Cal. 2008). The Third Appellate District has found that IWC Order 9 imposes "an affirmative obligation to ensure that workers are actually relieved of all duty." Cicairos v. Summit Logistics, Inc., 133 Cal. App. 4th 949, 962 (Cal. Ct. App. 2005), citations omitted. Given the split in California authority on this issue, it is likely to be a central part of the appeal in Brinker. Given the testimony from the hearings cited in this order, the court strongly suspects that the "no employer shall employ..." language does impose an affirmative duty on an employer to ensure that meal periods are taken. Thus, the court does not rely on these cases from our sister districts in interpreting meal periods regulations under IWC Order 14-2001.

Under IWC Order 14-2001, both the meal and rest period regulations use the phrase "Every employer shall authorize and permit..." Cal. Labor Code §5 states, "Unless the context otherwise requires, the general provisions hereinafter set forth shall govern the construction of this code." One key provision states, "'Shall' is mandatory and 'may' is permissive." Cal. Labor Code §15. The relevant language in the IWC Order 14-2001 reads "Every employer shall authorize and permit..." while the other IWC Orders use both "Every employer shall authorize and permit..." and "No employer shall employ..." to regulate meal and rest periods. Under the rules of construction directed by statute, IWC Order 14-2001 creates mandated rest and meal periods. One California Supreme Court case found that a "mandatory duty" as used in Cal. Gov't Code §815.6 (a zoning law) is not "merely discretionary or permissive...it must require, rather than merely authorize or permit, that a particular action be taken or not taken." Haggis v. City of Los Angeles, 22 Cal. 4th 490, 498 (Cal. 2000). Haggis is inapplicable as it does not deal with the Labor Code and does not use "authorize or permit" as a term of art.

The text of the rest period regulations of the non-agricultural IWC Orders provides a clear link between "authorize and permit" and "provide":

> Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours. Authorized rest period time shall be counted, as hours worked for which there shall be no deduction from wages.
>
> If an employer fails to *provide* an employee rest period in accordance with the applicable provisions of this Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the rest period is not provided.

See Cal. Code Regs. tit. 8, §§11010-11150 (2009), IWC Orders 1-2001, 2-2001, 3-2001, 4-2001, 5-2001, 6-2001, 7-2001, 8-2001, 9-2001, 10-2001, 11-2001, 12-2001, 13-2001, and 15-2001, emphasis added. The IWC plainly considered "authorizing and permitting" to be equal to "providing" as otherwise, the second paragraph would have no effect. Indeed, if the terms were not considered equal, then Section 226.7 itself would not apply to violations of rest period requirements as no IWC Order uses "No employer shall..." language in regulating rest periods.

Such an interpretation would render Section 226.7 a nullity with respect to rest periods for all industries. Any interpretation which renders statutory language superfluous is highly disfavored and to be avoided whenever possible. United States v. Novak, 476 F.3d 1041, 1048 (9th Cir. 2007).

While it is true that IWC Order 14-2001 lacks the paragraph that parallels the language of Section 226.7(b) in specifying the amount of wage penalty, that does not render Section 226.7(b) inapplicable. IWC Orders can confer greater protections than that provided by the Labor Code; they can not strip away such protections. In a letter to Governor Gray Davis, the author of the Assembly Bill 2509 (which enacted Section 226.7) stated:

> this bill codifies the actions of the IWC establishing a penalty for an employer who violates the law requiring meal and rest periods. Some have questioned the legal authority of the IWC to adopt this penalty. AB 2509, by codifying the IWC's penalty level, serves the goals of the sponsors of this measure by providing a remedy for a violation of the law (previously there was none) and ensuring that the IWC's actions will be legally sustainable.

Doc. 75, Ex. A-17, September 8, 2000 Letter, at 69. The comment suggests that the author may have intended to do nothing more than codify existing IWC Orders (which did not provide a one hour wage penalty for agricultural workers). However, the author also stated that the bill would provide a remedy for a violation of the law where previously no violation existed. That comment contains some ambiguity and can not be the sole basis of overturning the plain meaning of Section 226.7. An interpretation which applied Section 226.7 to all IWC Orders but IWC Order 14-2001 would require the court to read the exact same "authorize and permit" language to mean different things in different IWC Orders, a highly problematic result. Section 226.7 provides employers with full notice that failure to abide by IWC 14-2001 meal and rest period regulations would result in additional wages due to the employee. IWC Order 14-2001 clearly requires employers to "provide" both meal and rest periods within the meaning of Section 226.7(b). Plaintiffs allege that employers violated IWC Order 14-2001 as Plaintiffs did not voluntarily waive their meal and rest periods, stating a Section 226.7 claim.

Plaintiffs may seek recovery for violations of Section 226.7 in a private suit. Cal. Labor Code §218 states, "Nothing in this article shall limit the right of any wage claimant to sue

directly or through an assignee for any wages or penalty due him under this article." Sections 218 and 226.7 are both contained in Division 2, Part 1, Chapter 1, Article 1 of the Labor Code. Several courts have recognized the right of employees to bring private causes of action under Section 226.7. See, e.g. Guess v. U.S. Bancorp, 2007 WL 1345194, *2-3 (N.D. Cal. May 8, 2007), citing Murphy v. Kenneth Cole Productions, Inc., 40 Cal. 4th 1094, 1115 (Cal. 2007); Benitez v. Wilbur, 2009 U.S. Dist. LEXIS 15018, *12-13 (E.D. Cal. Feb. 26, 2009).

**B. AWPA and Jurisdiction**

In the prior motion to dismiss, the court set out the bounds of AWPA causes of action. AWPA allows seasonal and migrant agricultural employees to bring suit in federal court if employers fail to pay them wages owed or violate a working arrangement. Plaintiffs allege that Defendant posted IWC Order 14-2001 at job sites. IWC Order 14-2001 sets out state regulations which provide a number of protections to agricultural employees. Posting IWC Order 14-2001 for employees to read creates a working arrangement. See Wales v. Jack M. Berry, Inc., 192 F. Supp. 2d 1269, 1287 (M.D. Fla. 1999) (The defendants created a 'working arrangement' within the meaning of 29 U.S.C. 1822(c) and 1832(c) by posting an official Department of Labor poster that notified workers of their right to receive at least $ 4.25 for each hour worked in the workweek"). Since, the AWPA requirement to pay wages due and the alleged working arrangement incorporate much of the substance of California law regulating agricultural workers, violations of these regulations constitute AWPA claims over which the court has federal question jurisdiction. Many of Plaintiff's claims are thus AWPA claims. For the other claims for which AWPA does not provide for a federal cause of action, the court assumes supplemental jurisdiction as the issues appear to be closely interrelated. See 28 U.S.C. §1367(a).

Defendant argues that the Private Attorney General Act of 2004, Cal. Labor Code §2698 et seq. ("PAGA") raises unique issues that require adjudication in state courts. PAGA made significant changes to the Labor Code. First, it established a general private cause of action to recover penalties for violations of the Labor Code. Previously most actions for penalties could only be brought by the Labor and Workforce Development Agency ("LWDA"), a state agency.

Seventy-five percent (75%) of any recovery in these actions must be given to the state. Second, PAGA created a catch all penalty for violations of the Labor Code in all instances where no specific penalties are stated. Cal. Labor Code §2699(f). Plaintiffs seek relief under PAGA.

Cal. Labor Code §2699(l) does state, "The superior court shall review and approve any penalties sought as part of a proposed settlement agreement pursuant to this part." Notwithstanding the language specifying "superior court" review of settlements, PAGA claims can be brought in federal court. See, e.g. Solis v. Regis Corp., 2007 U.S. Dist. LEXIS 90657 (N.D. Cal. Dec. 10, 2007) (granting plaintiff summary judgment and holding she can recover under PAGA's catch all penalty provision); Benitez v. Wilbur, 2009 U.S. Dist. LEXIS 15018, *17-28 (E.D. Cal. Feb. 26, 2009) (dismissed with leave to amend, requiring PAGA claims to be brought as class actions); Singer v. Becton, Dickinson & Co., Med-Safe Sys., 2008 U.S. Dist. LEXIS 56326, *18 (S.D. Cal. July 23, 2008) (plaintiff granted leave to amend PAGA claim to plead exhaustion). The federal courts routinely approve settlement agreements and are familiar with the policy concerns involved. See, e.g. Lewis v. Starbucks Corp., 2008 U.S. Dist. LEXIS 83192, *3 (E.D. Cal. Sept. 10, 2008) (approving class action settlement agreement in which PAGA was one of several causes of action).

### IV. Order

Defendant's motion is DENIED.

Plaintiffs are ordered to refile their suit in a new case number within twenty (20) days to effectuate the court's March 31, 2008 Order granting severance. The Clerk of the Court is directed to close this case at the end of that time.

IT IS SO ORDERED.

Dated:   **March 31, 2009**           /s/ Anthony W. Ishii
                              CHIEF UNITED STATES DISTRICT JUDGE

15